**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ARCELIS MIRANDA RODRÍGUEZ on behalf and as legal guardian of minor P.V.M. and ARNEL ABRAHAM VALENTÍN MIRANDA,<br><br>Plaintiffs,<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC., DR. RAMÓN DOMÍNGUEZ ROCHE, his wife JANE DOE and their CONJUGAL PARTNERSHIP, THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP INC. and/or MEDPRO, INSURANCE COMPANY A, INSURANCE COMPANY B, INSURANCE COMPANY C, INSURANCE COMPANY X, INSURANCE COMPANY Y AND INSURANCE COMPANY Z,<br><br>Defendants. | Civil No. 21-01286 |

**OPINION AND ORDER**

Defendant Mennonite General Hospital, Inc. ("Defendant" or "Hospital") moved for partial summary judgment. (Docket No. 81). It requests the Court dismiss as time-barred any cause of action premised on its vicarious liability for Dr. Ramón Dominguez Roche's ("Dr. Domínguez") acts and omissions. Defendant bases its request on Plaintiffs' voluntary withdrawal of the claims against Dr. Domínguez almost two years ago. The Court DENIES Defendant's request.

## I.   BACKGROUND

On June 15, 2021, Plaintiffs Arcelis Miranda Rodríguez, on behalf of minor P.V.M. ("P.V.M."), and Arnel Abraham Valentin Miranda (together, "Plaintiffs") filed a Complaint against the Hospital, Dr. Domínguez, his wife, and their conjugal partnership, the Medical Protective Company, Insurance Company A, Insurance Company B, Insurance Company C, Insurance Company X, Insurance Company Y, and Insurance Company Z ("Complaint"). (Docket No. 1).

The Complaint seeks to recover damages against the named defendants pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code of 1930.[1] See 31 P.R. Laws Ann. §§ 5141-5142. Plaintiffs allege that Defendant's medical and nursing personnel in charge of overseeing newborn P.V.M.'s care, failed to diagnose, recognize, manage, and treat the newborn's respiratory distress. (Docket No. 1 ¶ 4.3). Plaintiffs attest that medical examinations later showed that P.V.M. developed hypertonia and right spastic hemiplegic cerebral palsy. (Docket No. 1 ¶ 3.21). Dr. Domínguez was the licensed physician, assigned by the Hospital, in charge of P.V.M.'s care after she was born. (Docket Nos. 95-1 ¶ 7, and 117 at 24 ¶

---

[1] The 1930 Puerto Rico Civil Code was abrogated by 31 P.R. Laws Ann. § 5311 et seq. ("2020 Puerto Rico Civil Code"). However, the 2020 Puerto Rico Civil Code provides that tort liability is governed by the law in force at the time when the act or omission that gave rise to the tort liability took place. See 31 P.R. Laws Ann. § 11720. The 1930 Puerto Rico Civil Code was in force when the events that gave rise to this malpractice case took place.

4). Plaintiffs posit that the Hospital's and Dr. Domínguez's failure to recognize, manage, and treat the P.V.M.'s respiratory distress was the proximate cause of P.V.M.'s severe and irreversible neurological damage. (Docket No. 1 ¶ 4.4). Plaintiffs argue that the Hospital is "both directly and vicariously liable for the negligent acts and/or omissions incurred by all physicians that treated P.V.M., including Dr. Domínguez, as well as its nursing staff, employees and/or independent contractors." (Docket No. 1 ¶ 4.8).

On July 8, 2021, Plaintiffs filed a *Motion for Voluntary Dismissal Without Prejudice*. (Docket No. 7). They withdrew, without prejudice, the claims against Dr. Domínguez, his wife, their conjugal partnership, and Medical Protective Company. (Docket No. 7 ¶ 1). The Hospital remained as the sole Defendant.

This is the backdrop for the Hospital's request. (Docket No. 81 at 1). According to Defendant, to secure any potential "percentage of liability attributable to Dr. Domínguez" for his alleged acts and omissions", Plaintiffs had one year to re-file their claims against him. (Docket No. 81 at 6). The Hospital premises its arguments on a Puerto Rico Supreme Court case that holds that if a claim of an injured party against a certain joint tortfeasor is time-barred, then none of the joint tortfeasors sued on time could be brought to the suit to respond to the injured

party for the "percentage of liability" attributable to the "extinguished" tortfeasor. (Docket No. 81 at 6).

Plaintiffs' response is threefold: (i) failure to provide a certified English translation of the only case in support of its request; (ii) existence of perfect solidarity between the Hospital and Dr. Domínguez, such that timely interruption of the statue of limitations against the Defendant tolled the statute of limitations against all joint tortfeasors, including Dr. Domínguez; and (iii) the Hospital's joint and several liability for the acts and omissions of Dr. Domínguez under the apparent agency doctrine.

## II. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c)

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*quoting* Thompson v. Coca-Cola Co., 552 F.3d at 175); *see also* Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996); Rivera-Muriente v. Agosto-Alicea,

959 F.2d 349, 352 (1st Cir. 1992). In turn, a fact is material "if it has the potential of determining the outcome of the litigation." Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008) (*citing* Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006)). In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson, 714 F.3d at 52 (*citing* Thompson, 522 F.3d at 175).

The movant has "the initial burden of 'demonstrate[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from engaging in assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment. *See* Local Civ. R. 56. In sum, it requires from the non-movant to "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If the fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. *See* Id. In turn, the movant "shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its

statement, the movant shall admit, deny, or qualify those additional facts. *See* Id. Any denial and qualification that the movant raises must be supported by a record citation. *See* Id.

Failure to comply with Local Rule 56(c) gives the Court the ability to accept a party's proposed facts as stated. *See* Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* Id.

### III. FINDINGS OF FACT

After crediting only material facts properly supported by accurate record citations, the Court makes the following findings:

1. Arcelis Miranda Rodríguez ("Ms. Miranda") went to the Hospital on July 12th, 2000, because she was in pain and felt she was having contractions. (Docket Nos. 86-7 at 104-105, and 96-1 Section B ¶ 1).

2. On July 12th, 2000, Ms. Miranda arrived at the Hospital's Emergency Room. (Docket Nos. 86-7 at 106, and 96-1 Section B ¶ 3).

3. Upon arriving at the Hospital on July 12th, 2000, and informing her symptoms, she was taken to the Prelabor Room. (Docket Nos. 86-7 at 106, and 96-1 Section B ¶ 4).

4. After being in observation in the Prelabor Room, Ms. Miranda was discharged from the Hospital on July 12th, 2000. (Docket Nos. 86-7 at 107-108, and 96-1 Section B ¶ 5).

5. After being discharged from the Hospital on July 12th, 2000, Ms. Miranda went to her mother's house. (Docket Nos. 86-7 at 108, and 96-1 Section B ¶ 6).

6. Her mother took her to CDT Barranquitas ("CDT"). (Docket No. 86-7 at 110).

7. Shortly after arriving at CDT, she was transferred to the Hospital in an ambulance because the CDT did not have the facilities to treat her. (Docket Nos. 86-7 at 111-113, and 96-1 Section B ¶ 7).

8. After 34 weeks of gestation, P.V.M. was born on July 13, 2000, at 12:55 AM, through spontaneous vaginal delivery in Mennonite General Hospital, Aibonito, Puerto Rico to Arcelis Miranda. (Docket Nos. 1 ¶ 3.2; 15 ¶ 3.2; 117 at 24 ¶ 1; and 96-1 Section B ¶ 9).

9. Dr. Domínguez was a pediatrician at Menonnite General Hospital at the time of P.V.M.'s birth. (Docket Nos. 85-3 at 33; 95-1 ¶ 6; and 117 at 24 ¶ 3).

10. At the time of P.V.M.'s birth, Dr. Domínguez was a pediatrician with privileges at the Hospital. (Docket Nos. 86-6 at 13-14; 86-8 at 2, ¶ 14; and 96-1 Section B ¶ 10).

11. Defendant assigned Dr. Domínguez as the pediatrician in charge of P.V.M. during her admission at the hospital on July 13 and July 14 of the year 2000. (Docket Nos. 95-1 ¶ 7, and 117 at 24 ¶ 4).

12. Ms. Miranda did not choose Dr. Domínguez as the pediatrician in charge of P.V.M. during her admission on July 13 and July 14 of the year 2000. (Docket Nos. 86-7 at 124, and 96-1 Section B ¶ 12).

13. On June 15, 2021, Plaintiffs filed the Complaint against the Hospital and Dr. Dominguez, among other defendants. (Docket Nos. 1, and 86-9 Section A ¶¶ 1-2).

14. Plaintiffs alleged in their Complaint that the Hospital is directly and vicariously liable for the negligent acts and/or omissions incurred by Dr. Dominguez. (Docket Nos. 1, and 86-9 Section A ¶ 3).

15. On July 8, 2021, Plaintiffs filed a *Motion for Voluntary Dismissal Without Prejudice*. (Docket Nos. 7, and 86-9 Section A ¶ 4).

16. In the *Motion for Voluntary Dismissal Without Prejudice*, Plaintiffs voluntarily withdrew the claims against Dr. Dominguez. (Docket Nos. 7, and 86-9 Section A ¶ 5).

### IV. APPLICABLE LAW

Puerto Rico substantive law applies since this is a diversity action. *See* Roja-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 94 F.3d 40, 43 (1st Cir. 2005) (*citing* Erie R.R. Co. V. Tompkins, 304 U.S. 64, 92 (1938)).

Personal Liability and the Doctrine of Apparent Agency

Puerto Rico law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141.[2] This legal mandate is not limited to a person's own acts. 31 P.R. Laws Ann. § 5142 decrees that the liability imposed by § 5141 "is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." 31 P.R. Laws Ann. § 5142.

---

[2] This citation corresponds to the 1930 Puerto Rico Civil Code. The 1930 Puerto Rico Civil Code was abrogated by 31 P.R. Laws Ann. § 5311 et seq. ("2020 Puerto Rico Civil Code"). However, the 2020 Puerto Rico Civil Code provides that tort liability is governed by the law in force at the time when the act or omission that gave rise to the tort liability took place. *See* 31 P.R. Laws Ann. § 11720. The 1930 Puerto Rico Civil Code was in force when the events that gave rise to this malpractice case took place.

In this sense, Puerto Rico's apparent or ostensible agency doctrine provides that "hospitals and physicians are directly and jointly liable to a victim of malpractice when [the victim] goes directly to a hospital for medical treatment and the hospital 'provides' the physicians who treat him." Suero-Algarín v. CMT Hospital Hima San Pablo Caguas, 957 F.3d 30, 38 (1st Cir. 2020) (quoting Márquez-Vega v. Martínez Rosado, 116 D.P.R. 397, 16 P.R. Offic. Trans. 487, 497 (1985)) (Internal quotations omitted). This situation differs from that of when "a person goes directly to a physician's private office, agrees with him as to the treatment he or she is going to receive, and goes to a given hospital on the physician's recommendation merely because said institution is one of several which the physician has the privilege of using. . ." Id. (quoting Márquez-Vega, 16 P.R. Offic. Trans. at 497). The key, thus, is "pinpointing who did the patient—first and foremost—entrust with his health: the hospital or the physician." Márquez-Vega, 16 P.R. Offic. Trans. at 496. "[I]t makes no difference whether the attending physician is a hospital employee or not." Id. 16 P.R. Offic. Trans. at 497.

Perfect and Imperfect Solidarity – Plurality of Joint Tortfeasors

As it pertains to tort liability, solidarity is the rule: when the damage is caused by two or more persons, "all joint tortfeasors are liable to the plaintiff for the damage sustained

by the latter." Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 654, --- P.R. Offic. Trans. --- (2003). Thus, joint tortfeasors are "in the hook" for the totality of the damages sustained by the plaintiff regardless of their respective degree of negligence. However, Puerto Rico law recognizes the right of contribution between joint tortfeasors, which allows a tortfeasor "who has paid more than his or her share to claim from the other [co-tortfeasors] their respective shares." Id.

Furthermore, Puerto Rico law distinguishes between perfect and imperfect solidarity. Perfect solidarity occurs "between several persons joined by a common interest, which have frequent relations among themselves or know each other." Ramírez v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe, 994 F.Supp.2d 218, 223 (D.P.R. 2014) (*quoting an English translation of* Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)). Imperfect solidarity, on the other hand, occurs "when it is established by law between persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic." Id.

Statute of Limitations

Perhaps the most important implication of the distinction between perfect and imperfect solidarity is how the statute of limitations is tolled and against whom it is tolled. Tort claims

under Articles 1802 and 1803 of the 1930 Puerto Rico Civil Code carry a statute of limitations of one year. *See* 31 P.R. Laws Ann. § 5298(2). The one-year term begins to run "once the injured party knows both that he has suffered a harm and who is responsible for it." Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 206 (1st Cir. 2009) (*citing* García Pérez v. Corporación de Servicios para la Mujer y la Familia, etc., 2008 TSPR 114, 2008 WL 2717833, at *4 (P.R. June 30, 2008)). Article 1874 of the 1930 Puerto Rico Civil Code decrees that the "[i]nterruption of prescription of action in [solidary] obligations equally benefits or injures all the creditors or debtors." 31 P.R. Laws Ann. § 5304. In the case of perfect solidarity, the tolling of the action as to one co-tortfeasor, tolls the action as to all co-tortfeasors.

Article 1874 of the 1930 Puerto Rico Civil Code is not applicable where imperfect solidarity is found. In those cases, "the aggrieved person will have to interrupt the prescriptive term individually with respect to each co-[tortfeasor], since the interruption of the prescription in the [imperfect] solidarity does not equally affect or harm all of the [tortfeasors]." Pérez Hernández v. Lares Medical Center, Inc., 207 D.P.R. 965, 980 (2021) (certified English translation at Docket No. 86-1 at 13). If the injured party's claim against a certain co-tortfeasor has expired, then the right of the injured party to claim liability from that

co-tortfeasor ceases and "the obligation for the other co-[tortfeasors] to respond for the former's part in the damages also ceases." Tonge v. Doctors' Center Hospital, 531 F.Supp.3d 491, 505 (D.P.R. 2021) (*quoting a certified English translation of* Maldonado Rivera v. Suárez, 195 D.P.R. 182, 209 (2016)). In which case, the court must deduct the percentage of negligence, or responsibility, of the extinguished co-tortfeasor. *See* Calderón Amézquita v. Rivera Cruz, Civil No. 17-2197, 2022 WL 458735, at *1 (D.P.R. Feb. 15, 2022) ("[E]ven if the plaintiff ultimately prevails, because they are at fault for failing to file a timely claim against the non-defendant tortfeasor, the portion of liability attributable to the non-defendant tortfeasor will be deducted from the total compensation available for them.").

Failure to Provide a Translated Copy of Propositions of Law

Pursuant to 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United State District Court for the District of Puerto Rico shall be conducted in the English language." This rule is enforced "where the Spanish language document or matter is key to the outcome of the proceedings in the district court." Puerto Ricans For Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008). Indeed, the First Circuit has advised district courts to not consider any documents before it that are in the Spanish language.

See González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004).

### V.  ANALYSIS AND CONCLUSION

On July 12, 2000, Ms. Miranda sought admittance to the Hospital after being in pain and felt she had contractions. P.V.M. was born on July 13, 2000, at 12:55 AM, in the Hospital. Dr. Domínguez had privileges with the Hospital. The Hospital assigned Dr. Domínguez to P.V.M.'s care. Ms. Miranda had no say on the Hospital's decision. Thus, Ms. Miranda entrusted her- and P.V.M.'s- health to the Hospital since she went directly to the Hospital seeking medical aid and it was the Hospital who provided Dr. Domínguez as the treating physician.

In this context, the doctrine of apparent agency controls per Márquez-Vega, 16 P.R. Offic. Trans. at 497. See also Casillas-Sánchez v. Ryder Memorial Hosp., Inc., 960 F.Supp.2d 362, 366 (D.P.R. 2013). The Court further finds there is perfect solidarity between the Hospital and Dr. Domínguez. It is uncontested they were joined by the common interest of providing medical attention to Ms. Miranda and P.V.M. Therefore, the Hospital may be held jointly and severally liable for Dr. Domínguez's negligence, if any. This is to say, both, the Hospital and Dr. Domínguez, are "in the hook" for the totality of damages suffered by Plaintiffs if negligence is proven. Puerto Rico law provides that the Hospital

could later request a contribution from other co-tortfeasors if it pays for more than its share of the negligence. Likewise, it is immaterial whether Dr. Domínguez was brought and later withdrawn from this suit, since the tolling of the action as to the Hospital, tolled the action as to Dr. Domínguez.[3]

Lastly, Defendant's request for partial summary judgment is premised on a citation of the Puerto Rico Supreme Court case <u>Maldonado Rivera</u>, *supra*. Defendant failed to provide an English translation of the same. Defendant's failure constitutes an independent ground for not granting its request for partial summary judgment.

The Court DENIES Defendant's request for partial summary judgment at Docket No. 81.

IT IS SO ORDERED.

In San Juan, Puerto Rico, June 7, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs also argue that under Puerto Rico law: (a) the statute of limitations does not run against judicially incompetent persons, such as P.V.M.; and (b) Plaintiffs timely filed two complaints against Dr. Domínguez at Puerto Rico state courts before the statute of limitations expired. It is accurate that, on July 7th, 2022, co-plaintiff Arnel Valentín Miranda filed the Complaint before the Aibonito State Court in Civil Case No. AI2022CV00233. (Docket Nos. 86-4, and 96-1 ¶ 13) and that on July 7th, 2022, co-plaintiff P.V.M. filed the Complaint before the Aibonito State Court in Civil Case No. AI2022CV00232. (Docket Nos. 86-5, and 96-1 ¶ 14). The Court, however, will not address those arguments. The law, as it relates to perfect solidarity, is clear: the tolling of the action as to one co-tortfeasor, tolls the action as to all co-tortfeasors.