IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARCELIS MIRANDA RODRÍGUEZ on behalf and as legal guardian of minor P.V.M. and ARNEL ABRAHAM VALENTÍN MIRANDA,<br><br>Plaintiffs,<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC., DR. RAMÓN DOMÍNGUEZ ROCHE, his wife JANE DOE and their CONJUGAL PARTNERSHIP, THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP INC. and/or MEDPRO, INSURANCE COMPANY A, INSURANCE COMPANY B, INSURANCE COMPANY C, INSURANCE COMPANY X, INSURANCE COMPANY Y AND INSURANCE COMPANY Z,<br><br>Defendants. | Civil. No. 21-01286 |

**OPINION AND ORDER**

Pending is Mennonite General Hospital, Inc.'s ("Defendant" or "Hospital") *Third Motion for Summary Judgment for Lack of Subject Matter Jurisdiction as to [Plaintiff] Arnel Valentin Miranda*. (Docket No. 82). Defendant claims this Court lacks diversity jurisdiction since co-plaintiff Arnel Valentín Miranda ("Mr. Valentín"), a military serviceman who joined the United States Army out of Puerto Rico ("ARMY"), was stationed in Hawaii at the time the filing of the Complaint (Docket No. 1). Defendant avers that Mr. Valentín failed to surmount the presumption that military

servicemen retain the domicile they had at the time of entry into the military. Defendant's request for summary judgment is DENIED.

## I.   BACKGROUND

On June 15, 2021, Plaintiffs Arcelis Miranda Rodríguez, on behalf of minor P.V.M., and Mr. Valentín (together, "Plaintiffs") filed an action for medical malpractice against Defendant. (Docket No. 1). Plaintiffs invoked the Court's diversity jurisdiction on the grounds of: (a) complete diversity of citizenship between Plaintiffs, who are residents of Florida and Hawaii, and Defendant, a resident of Puerto Rico; and (b) the claim exceeds $75,000.00. (Docket No. 1 ¶ 1.2). Plaintiffs listed Mr. Valentin's residence at the state of Hawaii. (Docket No. 1 ¶ 2.2). Mr. Valentín's physical address, at the time of the filing of the Complaint, was 91-809 Makule Rd, Ewa Beach, HI 96706. (Docket No. 1 ¶ 2.2).

On January 31, 2023, Defendant filed a *Third Motion for Summary Judgment for Lack of Subject Matter Jurisdiction as to [Plaintiff] Arnel Valentin Miranda* (Docket No. 82). Defendant posits that Mr. Valentín, a military serviceman, was domiciled in Puerto Rico at the time when the Complaint was filed, regardless of his residence in Hawaii. (Docket No. 82 at 7). Plaintiffs, in Defendant's view, failed to establish complete diversity as the Hospital is also domiciled in Puerto Rico.

## II. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c)

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*quoting* Thompson v. Coca-Cola Co., 552 F.3d at 175); *see also* Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). In turn, a fact is material "if it has the potential of determining the outcome of the litigation." Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008) (*citing* Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006)). In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson, 714 F.3d at 52 (*citing* Thompson, 522 F.3d at 175).

The movant has "the initial burden of 'demonstrate[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258

F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from engaging in assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment. *See* Local Civ. R. 56. In sum, it requires from the non-movant to "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If the fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. *See* Id. In turn, the movant "shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those additional facts. *See* Id. Any denial and qualification that the movant raises must be supported by a record citation. *See* Id.

Failure to comply with Local Rule 56(c) gives the Court the ability to accept a party's proposed facts as stated. *See* Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts

as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* Id.

### III. FINDINGS OF FACT

Foremost, the Court finds Defendant's *Response to Plaintiff's Proposed Statement of Additional Material Facts as to the Third Motion for Summary Judgment* (Docket No. 97-1) unpersuasive. Instead of refuting Plaintiff's proposed additional statement of facts (Docket No. 91-5 at 5-7) with record citations, as required by Rule 56, Defendant's strategy is striking Mr. Valentín's Statement Under Penalty of Perjury (Docket No. 91-1) by opining that it's a sham affidavit. (Docket No. 97). There is no basis for this conclusion.

As a general matter, "an affidavit is equivalent to other forms of evidence, such as deposition testimony." Ayala v. Kia Motor Corporation, Civil No. 19-1150, 2022 WL 4719145 at *3 (D.P.R. 2022) (*citing* 10A Wright & Miller, Federal Practice & Procedure § 2727 (3d ed. 2011)). However, when a party or an interested witness "has given clear answers to unambiguous questions in discovery, [they] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." Escribano-Reyes v. Professional Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (*quoting* Hernández-Loring v. Universidad

Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000)) (internal quotations omitted); Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994). This being said, "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 26 (1st Cir. 2002); see also Shepherd v. Slater Steels Corp., 168 F.3d 998, 1007 (7th Cir. 1999) ("[W]here the deposition testimony is ambiguous or incomplete, as it is here, the witness may legitimately clarify or expand upon that testimony by way of an affidavit.").

Notably, Defendant did not develop argumentation as to contradictions, or demonstrative or manifest discrepancies, in Mr. Valentín's affidavit with prior testimony. As such, the Court deems Defendant's argument waived. See Zannino, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Rivera-Gomez, 843 F.2d at 635 (quoting Paterson-Leitch Co., 840 F.2d at 990 ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.").

Nevertheless, the Court examined Mr. Valentín's deposition testimony and affidavit, and couldn't identify contradictions that would deem Mr. Valentín's affidavit a sham. The Court DENIES Defendant's request to strike Mr. Valentín's Statement Under Penalty of Perjury.

After crediting only material facts supported by accurate record citations, the Court finds the following facts are uncontested:

1. On June 15, 2021, Plaintiffs filed their Complaint. (Docket No. 1).

2. Plaintiffs allege that Mr. Valentín "is a citizen of the United States, and resident of the state of Hawaii." (Docket Nos. 1, ¶ 2.2, and 91-5 Section a ¶ 2).

3. Plaintiffs invoked the jurisdiction of the Court pursuant to 28 U.S.C. § 1332, based on complete diversity between Mr. Valentín, a citizen of the state of Hawaii, and the Hospital, a citizen of Puerto Rico. (Docket Nos. 1 ¶ 1.2, and 91-5 Section a ¶ 3).

4. Mr. Valentín is a member of the ARMY. (Docket Nos. 91-2 at 45, and 91-5 Section a ¶ 4).

5. Mr. Valentín lived in and was a resident of Barranquitas, Puerto Rico until he joined the ARMY in 2018, several months after turning 18 years old. (Docket Nos. 91-1 ¶ 3; 91-2 at 51; and 91-5 Section a ¶¶ 5-7).

6. Upon joining the ARMY, Mr. Valentín was sent to the state of Oklahoma for seven (7) days to get his uniforms and training equipment. (Docket Nos. 91-2 at 79, and 91-5 Section a ¶ 8).

7. Afterwards, the ARMY sent Mr. Valentín to San Antonio, Texas to learn English. (Docket Nos. 91-2 at 79, and 91-5 Section a ¶ 10).

8. Mr. Valentín stayed in San Antonio, Texas for five (5) to six (6) weeks to learn English. (Docket Nos. 91-2 at 81, and 91-5 Section a ¶ 11).

9. Following, the ARMY sent Mr. Valentín to South Carolina for Basic Training. (Docket Nos. 91-2 at 81, and 91-5 Section a ¶ 12).

10. The ARMY then sent Mr. Valentín to Virginia to train for his military position as logistics agent for the ARMY. (Docket Nos. 91-2 at 81, and 91-5 Section a ¶ 14).

11. After completing his military training, the ARMY assigned and stationed Mr. Valentín in Hawaii for three (3) years. (Docket Nos. 91-2 at 83 and 85, and 91-5 Section a ¶¶ 16-18).

12. Mr. Valentín moved to Hawaii on October 15, 2018. (Docket No. 91-1 ¶ 5).

13. Mr. Valentín obtained his driver's license in Hawaii on February 1, 2019. (Docket No. 91-1 ¶ 7).

14. Between February and March 2019, Mr. Valentín bought a car in Hawaii, which was a Nissan Altima. (Docket No. 91-1 ¶ 8).

15. In the Summer of 2020, Mr. Valentín acquired a second car, a BMW model 335i and started attending the Rogue Status Car Club in Oahu, Hawaii. (Docket No. 91-1 ¶ 9).

16. Mr. Valentín married in Hawaii on July 24, 2020. (Docket No. 91-1 ¶ 10).

17. Mr. Valentín attended the New Testament Christian Church of Hawaii between January and February 2021. (Docket No. 91-1 ¶ 11).

18. At the time of the filing of the Complaint, Mr. Valentín was stationed and living in Hawaii. (Docket Nos. 91-2 at 85, and 91-5 Section a ¶ 19).

19. At the time of the filing of the Complaint, Mr. Valentín's mailing address was 126 Neff St. 626 PMB, Wahiawa, HI 96786. (Docket No. 91-1 ¶ 12).

20. At the time of the filing of the Complaint, Mr. Valentín's residential address was 1542 Kolekole Ave. Blgd. 2075, Room 114, Schofield Barracks, HI 96786. (Docket No. 91-1 ¶ 13).

21. Mr. Valentín filed federal tax returns in Hawaii for the years 2020 and 2021. (Docket Nos. 91-1 ¶ 14, 91-3, and 91-4).[1]

22. On March 8, 2022, the ARMY notified Mr. Valentín of his transfer from his station in Hawaii to his new military station at Fort Bliss, Texas. (Docket Nos. 82-4, and 91-5 Section a ¶ 24).

23. Mr. Valentín never had a bank account, paid taxes, owned or rented a car, or owned or rented a residence in Puerto Rico. He never obtained a driver's license in Puerto Rico. He never voted in Puerto Rico. (Docket No. 91-1 ¶ 2).

24. In February 2021, Mr. Valentín's mother vacated the house where he grew up in Barranquitas and moved to Tampa, Florida. (Docket Nos. 86-7 at 22 and 30, and 91-1 ¶ 15).

25. At the time of the filing of the Complaint, Mr. Valentín had no property whatsoever in Puerto Rico. His home, cars, clothes and all his property were in Hawaii. Mr. Valentín's wife was in Hawaii as well. (Docket No. 91-1 ¶ 17).

26. At the time of the filing of the Complaint, Mr. Valentín had lived in Hawaii for over two (2) and a half years. (Docket No. 91-1 ¶ 19).

27. After moving to Hawaii, Mr. Valentín visited his mother and sister P.V.M. in Puerto Rico twice, while vacationing, in December 2018 and December 2020. Mr.

---

[1] Defendant objects to Plaintiffs' use of official tax records to bolster Mr. Valentín's change of domicile argument because they were never produced during discovery. According to Defendant, said fact entails that the tax records "cannot be used at this stage to try to oppose a motion for summary judgment." (Docket No. 97-1 ¶ 13). However, Defendant has not alleged that said documentation was solicited by it and that Plaintiffs refused to discover it. The Court was not placed in a position to preclude the tax returns pursuant to Fed. R. Civ. P. 37.

        Valentín returned to Hawaii once the vacation was over. (Docket No. 91-1 ¶ 20).

28. Since his December 2020 visit to his mother and sister P.V.M., Mr. Valentín has never returned to Puerto Rico. (Docket No. 91-1 ¶ 21).

## IV. APPLICABLE LAW

<u>Diversity Jurisdiction</u>

Federal courts have original jurisdiction of civil actions where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between "citizens of different states." *See* 28 U.S.C. § 1332(a)(1). This is commonly known as diversity jurisdiction. "[D]iversity must be complete; that is, no plaintiff may be a citizen of the same state as any defendant." <u>BRT Management LLC v. Malden Storage LLC</u>, No. 22-1389, 2023 WL 3579390, at *3 (1st Cir. May 22, 2023). Citizenship is determined by domicile. *See* <u>Hall v. Curran</u>, 599 F.3d 70, 72 (1st Cir. 2010); <u>García Pérez v. Santaella</u>, 364 F.3d 348, 350 (1st Cir. 2004). "A person's domicile is the 'place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning (*animus revertendi*).'" <u>Chico v. Puerto Rico Elec. Power Authority</u>, 312 F.Supp.2d 153, 157 (D.P.R. 2004) (*quoting* <u>Valentín v. Hospital Bella Vista</u>, 254 F.3d 358, 366 (1st Cir. 2001)). In turn, domicile can be established "by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely." <u>Hall</u>, 599 F.3d at

72 (*citing* García Pérez, 364 F.3d at 350; Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988)). However, "[i]t is not required that the intention to stay there be permanent. . ." Chico, 312 F.Supp.2d at 157 (*citing* Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992)). Therefore, "[i]n ordinary circumstances, all that is needed to change one's domicile is physical presence in the new state and the intent to make that state one's home." Id. (*citing* Rodríguez-Díaz, 853 F.2d at 1029). Further, domicile is determined at the time the suit is filed. *See* Id.; García-Pérez, 364 F.3d at 350-351.

Once domicile is challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence. *See* Hall, 599 F.3d at 72 (*quoting* García-Pérez, 364 F.3d at 350; Bank One, Texas, N.A., 964 F.2d at 50). Courts take into consideration various factors, none which are dispositive, to ascertain the extent of a party's ties to the purported domicile:

> current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

13E Wright & Miller, Federal Practice & Procedure § 3612 (3d ed. 2023).

There is a specific presumption when it comes to members of the military: "Service personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the services." Meléndez-García v. Sánchez, 629 F.3d 25, 41 (1st Cir. 2010) (*quoting* 13E Wright & Miller, Federal Practice & Procedure § 3617, at 607 (3d ed. 2009)). This presumption is rebuttable by demonstrating "that despite his involuntary presence in a state, he or she has formed the intention to make a home in that state." Id. The demonstration must be made through clear and unequivocal evidence. *See* Id.; Chico, 312 F.Supp.2d at 158.

## V.     ANALYSIS AND CONCLUSION

Mr. Valentín enlisted in the United States Army in 2018. At the time, he lived and was a resident of Barranquitas, Puerto Rico. This activates the presumption that Mr. Valentín did not acquire a new domicile when he was stationed outside of Puerto Rico. Therefore, the law of the Circuit requires the Court to presume that Mr. Valentín retained his domicile in Puerto Rico. *See* Meléndez-García, 629 F.3d at 41. This presumption, however, is rebuttable.  Mr. Valentín must demonstrate —clearly and unequivocally— that he intended to make a home outside of Puerto Rico. He did so.

It is uncontested from the filings on record that Plaintiff had multiple and deep ties to the state of Hawaii, at the time of the filing of the complaint, which continue to this day. Mr. Valentín moved to Hawaii on October 15, 2018, after the ARMY stationed him there for three (3) years. Therein, on February 1, 2019, he obtained his driver's license and shortly thereafter, bought a car and later, a second car. He joined a car club.

On July 24, 2020, Mr. Valentín got married, also in Hawaii. Between January and February 2021, Mr. Valentín started attending the New Testament Christian Church of Hawaii. Mr. Valentín rendered his federal tax returns in Hawaii for the years 2020 and 2021.

After moving to Hawaii, Mr. Valentín only visited Puerto Rico twice to spend Christmas vacations with his mother and sister. Mr. Valentín has not returned to Puerto Rico since December 2020.

At the time of the filing of the Complaint, Mr. Valentín had no property in Puerto Rico; his home, wife, and all his property were in Hawaii.

The Court finds that, despite his involuntary presence in Hawaii, Mr. Valentín clearly and unequivocally made Hawaii his home. The fact that the ARMY stationed him in Hawaii for a definite period of three (3) years, is inconsequential. When Mr. Valentín left Puerto Rico, it was for good. It is uncontested that he never opened bank accounts, paid taxes, owned or rented a car, or owned

or rented a residence in Puerto Rico. Moreover, he never obtained a driver's license in Puerto Rico and never voted in Puerto Rico. Net: Nothing in the record points towards —much less establishes— Mr. Valentín's interest to return to Puerto Rico. He already had a home, a job, a wife, and a life in Hawaii. The unrefuted facts demonstrate, clearly and unequivocally, that Mr. Valentín adopted Hawaii as his new domicile. Plaintiffs have demonstrated by a preponderance of the evidence, that Mr. Valentín is indeed domiciled in Hawaii, therefore this Court is convinced diversity jurisdiction exists.

Consequently, the Court DENIES Defendant's request for summary judgment at Docket No. 82 since there is complete diversity between Plaintiffs and Defendant.

IT IS SO ORDERED.

In San Juan, Puerto Rico, June 9, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE